UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | | |
|---|---|---|
| NATALIE COBURN, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| BOYD GAMING CORPORATION, | ) | |
| *Operator of Ameristar Casino Resort* | ) | Case No. 4:25 CV 76 RWS |
| *Spa St. Charles*; AMERISTAR | ) | |
| CASINO ST. CHARLES, LLC; | ) | |
| ANDREW ROY CASEM; JOHN | ) | |
| EDWARD STANCZAK, IV; TY | ) | |
| EDWARD CLAMORS; and CITY | ) | |
| OF SAINT CHARLES, MISSOURI, | ) | |
| | ) | |
| Defendants, | ) | |

## MEMORANDUM AND ORDER

Plaintiff Natalie Coburn's second amended complaint asserts that she suffered injuries inflicted by a security guard at a nightclub located at the Ameristar Casino in St. Charles, Missouri. She also asserts claims against police officers who arrested Coburn and removed her from the casino. The defendants have all filed motions to dismiss the complaint based on a failure to state a claim. I will grant the motions to dismiss for the reasons that follow.

### *Background*

According to Coburn's second amended complaint, on October 5, 2019, Coburn was a patron at Defendant Ameristar Casino's RYSE Nightclub in St. Charles, Missouri. The nightclub hosted a DJ Pauly D event that evening.

During the event Coburn and her four fellow attendees stood on a seating bench to "better their view of the DJ booth."  [ECF # 64 at 4]  Coburn stood on the seating bench for over an hour and was never advised by casino employees not to do so.  The event continued into the early morning of October 6th, concluding around 1:30 a.m.  Coburn alleges that she was in the process of stepping down from the bench when she was approached by Defendant Andrew Roy Casem, a casino security guard.  Casem "appeared visibly agitated and immediately yelled 'get off my bench' and used his finger to aggressively motion towards the floor."  [Id.]  Coburn continued to stand on the bench when Casem "visibly irate, then yelled louder and directly in [Coburn's] ear, 'get off my bench.'"  [Id. at 5]  Casem then yelled, "I'll take you off the bench myself." Casem then walked around to the front of the seating area and stood "in unreasonably close proximity to [Coburn's] face."  Casem again told Coburn to get off his bench.  Coburn advised Casem that "he was not the owner of the RYSE Nightclub."  [Id.]  Coburn and Casem continued to argue when one of Coburn's fellow attendees stood between Coburn and Casem in an apparent attempt to diffuse the confrontation.  Coburn alleges that Casem grabbed her by the head.  In response Coburn pushed Casem "off of her person."  Coburn alleges that Casem "threw [Coburn] onto the VIP seating bench and then onto

2

the floor of the nightclub and placed [Coburn's] left hand in handcuffs" with the assistance of another casino security guard.  Coburn asserts that Casem's actions resulted in physical and emotional injuries including injuries to her shoulder, face, ankle, and wrist.

Coburn alleges that St. Charles Police Department police officers located in the casino then entered the nightclub, "grabbed [Coburn's] hair" and forced her hands behind her back in order to place her right arm in handcuffs.  Coburn alleges that she was escorted by police officers to a separate room at the casino and was "thrown to the ground and onto her face and a SCPD police officer placed a knee on [Coburn's] neck."  After the police searched Coburn the officer removed his knee from her neck.  [Id. at 6]  When Coburn asked an officer why the officers were being so physically aggressive toward her the officer "advised that this was due to [Coburn] assaulting the bouncer."  [Id.] Coburn told the officer that Casem had been the aggressor.  The officer responded that this was "not a reason for [Coburn] to assault the bouncer." While Coburn was detained, Coburn overheard Casem provide his statement to the officers.  The officers did not ask Coburn or her four fellow attendees for their version of events.  Coburn does not identify the police officers by name as

3

to these allegations in any version of her complaint.[1]

After Coburn was read her "rights" she was raised to a standing position and was escorted towards the front entrance of the casino.  Coburn alleges that she can be seen on a police body camera walking down the hallway toward the exit and the camera does not show her kicking or scratching at the officers contrary to the information in the police report.[2]  As she walked down the hallway, Defendant St. Charles police officers Ty Edward Clamors and John Edward Stanczak "failed to investigate her multiple requests that they stop bending her wrists and applying pressure."  [Id. at 7]  Coburn was transported to the St. Charles Police Department.  Coburn alleges that "police officers also failed to investigate and disregarded [Coburn's] multiple statements that she was being caused physical pain by the bending of her wrists."  Coburn asserts that the bending of her wrists "resulted in severe nerve damage, lacerations and additional injury, requiring medical treatment."

Coburn alleges that Defendant Boyd Gaming Corporation (Boyd) operates Defendant Ameristar Casino St. Charles, LLC (Ameristar).  These

---

[1] Coburn does assert in her second amended complaint in her claim against Staneczak and Clamors for unlawful seizure that they ignored "an eyewitness confirming Plaintiff's innocence."  [ECF # 64 at 16]

[2] Coburn alleges that the police report falsely stated that she began to kick and scratch police officers when the officers were questioning Casem about the incident and when she was being escorted out of the casino.  Coburn also claims the report falsely stated that no injuries were observed on her despite visible lacerations, bruising, and bleeding on her face, cheekbone, and wrists.

4

entities along with security guard Casem are the Ameristar Defendants.

*Coburn's initial and two amended complaints*[3]

On October 4, 2024, Coburn filed her first version of this lawsuit in Missouri state court.  She filed her petition three days shy of five years after the events at issue occurred on October 6, 2019.  The filing date is significant because the Ameristar Defendants assert that the applicable statute of limitations expired two years after the event.  Moreover, the initial complaint named as defendants the Ameristar Defendants, the City of St. Charles, and the St. Charles Police Department.  Coburn asserted claims against the City of St. Charles and the St. Charles Police Department for negligent supervision and training, negligent use of force, and negligent seizure.  The initial complaint did not assert any claims against any individual police officers nor were any "John Doe" defendants included in the pleadings.

All of the defendants filed motions to dismiss which were fully briefed by the parties by December 19, 2024.  On December 27, 2024, Coburn filed her first amended complaint in state court.  Significantly, she dropped her claims against the St. Charles Police Department and added Officers Clamors and Stanczak as defendants.  Moreover, she changed the claims she asserted against

---

[3] Coburn's state law claims are all based on Missouri law.

5

the City of St. Charles and added new claims against the individual officers. Her amended complaint dropped her negligence claims and asserted claims for: Count VI - excessive force (4th Amend.) against the two officers; Count VII – unlawful seizure (4th and 14th Amend.) against the two officers; Count VIII – excessive force (4th Amend.) against the City; and Count IX – unlawful seizure (4th and 14th Amend.) against the City. On January 17, 2025, the City and the officers removed the case to this Court based on Coburn's new assertion of federal claims. After removal the parties again fully briefed the defendants' renewed motions to dismiss. In response to these motions Boyd filed a second amended complaint on March 27, 2025.

In her second amended complaint[4] Coburn asserts claims against Boyd, Ameristar, security guard Casem, St. Charles Police officers Stanczak and Clamors, and the City of St. Charles, Missouri. Coburn asserts the following claims:

Count I -  Negligence by Respondeat Superior against Boyd and Ameristar.

Count II – Negligent Supervision against Boyd and Ameristar

Count III – Negligent Training against Boyd and Ameristar

---

[4] I note that Coburn is proceeding pro se. However, her pleadings, motions, and briefs in this case indicate that they are being drafted by a person with legal training. Yet Coburn is not a licensed attorney in the State of Missouri and no attorney has entered this case on her behalf. If this case had gone forward I would have inquired about the preparation of Coburn's filings.

6

Count IV – Negligence against Boyd, Ameristar, and Casem

Count V – Negligent Infliction of Emotional Distress against Boyd, Ameristar, and Casem

Count VI – Excessive Force (4th Amendment) against Stanczak and Clamors

Count VII – Unlawful Seizure (4th Amendment) against Stanczak and Clamors

Count VIII – Unlawful Seizure (14th Amendment) against Clamors

Count IX – Excessive Force (4th Amendment) against City of St. Charles

Count X – Unlawful Seizure (4th Amendment) against City of St. Charles

All of the defendants have moved again to dismiss the claims against them.

***Legal Standard***

In ruling on a motion to dismiss, I must accept as true all factual allegations in the complaint and view them in the light most favorable to Plaintiff. Fed. R. Civ. P. 12(b)(6); Erickson v. Pardus, 551 U.S. 89, 94 (2007). An action fails to state a claim upon which relief can be granted if it does not plead "enough facts to state a claim to relief that is plausible on its face." Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007).  A "plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formalistic recitation of elements of a cause of action will not do." Id. (internal quotations

7

omitted).  To survive a motion to dismiss a plaintiff's factual allegations "must be enough to raise a right to relief above the speculative level." Id. at 555.

### *Discussion*

*Claims against the Ameristar Defendants and Casem*

The Ameristar Defendants and security guard Casem moved to dismiss the negligence claims against them on statute of limitations grounds and for a failure to state a claim.

Coburn's claims Boyd and Ameristar are vicariously liable for Casem's actions through the doctrine of respondeat superior (Count I).  She also asserts that Boyd and Ameristar were negligent in failing to train (Count II) or supervise (Count III) Casem.

Coburn asserts a negligence claim against Boyd, Ameristar, and Casem for negligence (Count IV) and a claim for a negligent infliction of emotional distress (Count V).  However, the negligence theories asserted in these claims are directed solely at Casem.  In Count IV Coburn asserts two grounds for her negligence claim against Casem.  She alleges that Casem breached his duty to maintain a safe environment and protect patrons at the casino from foreseeable harm by failing to use confrontation de-escalation techniques in his interaction with Coburn.  She also alleges that he increased the confrontation through his aggressive behavior –

yelling, threatening to remove her from standing on the seating bench, standing unreasonable close to her face – culminating in grabbing her head and throwing her to the ground causing Coburn physical injuries.  In Count V she asserts Casem's same negligent behavior caused her "emotional distress and medically significant and diagnosable mental injury."  [Id. at 14]

In their motion to dismiss, Boyd, Ameristar, and Casem assert that Coburn is impermissibly pleading a negligence claim instead of asserting an assault and battery claim that is the actual cause of Coburn's injuries.  They argue that Coburn is attempting to circumvent the two-year statute of limitations for assault and battery claims by asserting negligence claims with its five-year statute of limitations period.[5]  Under Missouri law, to determine whether a claim is barred by the statute of limitations, "courts look to the gist or gravamen of an action."  Wages v. Young, 261 S.W.3d 711, 715 (Mo. Ct. App. 2008) (internal quotation and citation omitted).  "The gravamen of the complaint or a fair reading of the complaint in its totality, should determine what type of cause of action is alleged and then the applicable statute of limitations should be applied.  The statute of limitation is not determined by the form of the action, but by its object.  Where a tort claim is a mere label used to avoid the statute of limitation of the principal

---

[5] Assault and battery claims are subject to a two-year statute of limitations.  Mo. Rev. Stat. § 516.140.  Negligence claims are subject to a 5-year statute of limitations. Mo. Rev. Stat. § 516.120(4).

claim ... the action should be judged by the shorter ... statute of limitations and should be barred." Id. See also Devitre v. Orthopedic Ctr. of St. Louis, LLC, 349 S.W.3d 327, 330 (Mo. 2011) (Petition asserting an assault and battery claim was deemed to be a malpractice claim based on the alleged facts.); Cleveland v. Hand Therapy of Chesterfield, No. 4:07CV01138 FRB, 2008 WL 11513084, at *2 (E.D. Mo. June 27, 2008) (Although complaint asserted claims for fraud and conspiracy the gravamen of the compliant was an action for malpractice and therefore barred by the shorter statute of limitations.).

Under Missouri law, assault is "an apprehension of bodily harm or offensive contact on the part of the plaintiff caused by defendant's conduct." Phelps v. Bross, 73 S.W.3d 651, 656 (Mo. Ct. App. 2002). Battery is defined as "an intended, offensive bodily contact with another." Id. The gravamen of Coburn's claims against Casem is that she was assaulted by Casem in his threatening gestures, his close proximity, and his loud demeanor. Ultimately, Casem allegedly battered Coburn by grabbing her by the hair and throwing her to the seating bench then onto the floor. The gravamen of Coburn's complaint are claims of assault and battery by Casem, not a negligence claim. The two-year assault and battery statute of limitations applies barring these claims asserted almost five years after the incident. As a result, I will grant Boyd, Ameristar, and Casem's motion to dismiss

10

Coburn's negligence claims in Count I (respondeat superior) and Count IV (negligence).  In addition, I will grant these defendants' motion to dismiss Count V for a negligent infliction of emotional distress because there is not an independent action for a negligent infliction of emotional arising from an assault and battery. Gera v. Blalock, 202 S.W.3d 40, 41 (Mo. Ct. App. 2006).

I will also grant Boyd and Ameristar's motion to dismiss Count II (negligent supervision) and Count III (negligent training) for a failure to state a claim. Negligent supervision is a variant of the common law tort of negligence.  Cook v. Smith, 33 S.W.3d 548, 553 (Mo. Ct. App. 2000).  Under Missouri law, the following elements must be established for a cause of action for negligent supervision or negligent training:

> A master is under the duty to exercise reasonable care so to control his servant while acting outside the scope of his employment as to prevent him from intentionally harming others or from so conducting himself as to create an unreasonable risk of bodily harm to them if
> (a) the servant
> (i) is upon the premises in possession of the master or upon which the servant is privileged to enter only as his servant, or
> (ii) is using a chattel of the master, and
> (b) the master
> (i) knows or has reason to know that he has the ability to control his servant, and
> (ii) knows or should know of the necessity and opportunity for exercising such control.

Reed v. Kelly, 37 S.W.3d 274, 278 (Mo. Ct. App. 2000).  "[T]his cause of action

11

also requires evidence that would cause the employer to foresee that the employee would create an unreasonable risk of harm outside the scope of his employment." Id.

Coburn's second amended complaint alleges that Casem's threatening and physically engaging behavior was outside the scope of his employment. Yet Coburn fails to allege that Boyd or Ameristar had prior knowledge, before the incident at issue, that would cause them to foresee that Casem would create an unreasonable risk of harm outside the scope of his employment. As a result, Coburn fails to state a claim for negligent supervision. Lambert v. New Horizons Cmty. Support Servs., Inc., No. 2:15-CV-04291-NKL, 2016 WL 1562963, at *5 (W.D. Mo. Apr. 18, 2016) (To state a claim for negligent supervision a plaintiff must allege that past acts should have led the employer to foresee the employee's conduct.).

Under Missouri law, a negligent failure to provide adequate training is also recognized as a variant of the common law tort of negligence. Lambert v. New Horizons Cmty. Support Servs., Inc., No. 2:15-CV-04291-NKL, 2016 WL 1562963, at *5 (W.D. Mo. Apr. 18, 2016). The following elements must be established for a cause of action for negligent training:

> (1) a legal duty on the part of the defendant to use ordinary care to protect the plaintiff against unreasonable risks of harm;

12

(2) a breach of that duty;
(3) a proximate cause between the breach and the resulting injury; and
(4) actual damages to the plaintiff's person or property.

Id.  Coburn's second amended complaint alleges that Boyd and Ameristar failed to train Casem in de-escalation techniques and conflict management which led to his use of intimidation tactics.  However, the second amended complaint lacks any allegations that Boyd or Ameristar knew or should have known that Casem required specific training to prevent him from inflicting intentional harm.  Coburn's allegation that proper training would have prevented her confrontation with Casem is conclusory.  It does not provide any basis to infer that Boyd and Ameristar foresaw Casem's actions in the absence of some specific training.  Lopez v. Three Rivers Elec. Co-op., Inc., 26 S.W.3d 151, 156 (Mo. 2000) ("Under the principles of general negligence law, whether a duty exists in a given situation depends upon whether a risk was foreseeable. [] In the context of determining proximate causation, however, foreseeability refers to whether a defendant could have anticipated a particular chain of events that resulted in injury or the scope of the risk that the defendant should have foreseen.").

As a result, I will grant Boyd and Ameristar's motion to dismiss.

*Claims against Officers Stanczak and Clamors*

On October 4, 2024, Corburn filed her original petition in state court.  In that

13

petition she asserted claims against the City of St. Charles and the St. Charles Police Department for negligent supervision and training, negligent use of force, and negligent seizure. The initial complaint did not assert any claims against any individual police officers nor were any "John Doe" defendants included in the pleadings.

On December 27, 2024, Coburn filed her first amended complaint in state court. Significantly, she dropped her claims against the St. Charles Police Department and added Officers Clamors and Stanczak as defendants. Moreover, she changed the claims she asserted against the City of St. Charles and added new claims against the individual officers. Her amended complaint dropped her negligence claims and asserted claims under 42 U.S.C. § 1983 for: Count VI - excessive force (4th Amend.) against the two officers; Count VII – unlawful seizure (4th and 14th Amends.) against the two officers; Count VIII – excessive force (4th Amend.) against the City; and Count IX – unlawful seizure (4th and 14th Amends.) against the City.[6]

Stanczak and Clamors filed a motion to dismiss the claims against them (Counts VI, VII, and VII) based on statute of limitations grounds. "Missouri's

---

[6] In her second amended complaint, Coburn added an additional unlawful seizure claim against Clamors as Count VIII.

five-year statute of limitations for personal injury actions, Mo.Rev.Stat. § 516.120(4) (2000), applies [] section 1983 claims." Sulik v. Taney Cnty., Mo., 393 F.3d 765, 767 (8th Cir. 2005).  The five-year limitations period on Coburn's claims expired on October 7, 2024.  Coburn did not assert any claims against Stanczak and Clamors until December 27, 2024.

Coburn asserts that the amended complaint she filed on December 27, 2024, relates back to her original petition which makes her claims against Stanczak and Clamors timely.  Under Federal Rule of Civil Procedure 15, as applicable to this case, an amendment to a pleading relates back to the date of the original pleading when it asserts a claim that arose out of an occurrence set out in the original pleading, and:

> "the amendment changes the party or the naming of the party against whom a claim is asserted, … if, within the period provided by Rule 4(m) for serving the summons and complaint, the party to be brought in by amendment: (i) received such notice of the action that it will not be prejudiced in defending on the merits; and (ii) **knew or should have known that the action would have been brought against it, but for a mistake concerning the proper party's identity.**

Fed. R. Civ. P. 15(c)(1)(C) (emphasis added). "The only question under Rule 15(c)(1)(C)(ii), then, is whether [a] party [] knew or should have known that, absent some mistake, the action would have been brought against him." Krupski v. Costa Crociere S. p. A., 560 U.S. 538, 549 (2010).

15

In her original petition filed in state court, Coburn filed three claims against the St. Charles Police Department and the City of St. Charles for negligent supervision and training (Count VI); negligent use of force (Count VII); and negligent seizure (Count VII).  Her petition asserts claims against the SCPD because it "administers a set of law enforcement policies, practices and customs involving hiring, training, and supervision of its police officers, and covering the use of force and the seizure and search of persons encountered in the course of officers' duties."  [ECF No. 3 at ¶ 7]   Her original petition never mentions Stanczak and Clamors by name.  To the contrary, her petition asserts her claims occurred "in the presence of a minimum of five Defendant SCPD police officers, which includes the presence of a SCPD Sergeant."  [Id. at ¶ 96]

In her first amended complaint filed more than two months later (after all the defendants filed motions to dismiss) Coburn dropped her claims against the SCPD, dropped her negligence claims, and added her federal section 1983 claims against Stanczak and Clamors and the City of St. Charles.

In her response to Stanczak and Clamors' motion to dismiss, Coburn does not assert that she did not know of their identity before she filed her original petition.  The absence of any mistake is apparent from her original petition.  In her petition she sued Casem individually as well as his alleged employers Boyd and

Ameristar.  Her petition confirms that she was aware of her ability to bring claims against an individual employee (here Stanczak and Clamors).  Her decision to not assert individual claims against Stanczak and Clamors was not a mistake concerning a proper party's identity as required under Rule 15.  She purposely sued their employer the SCPD for negligence because she asserted that the SCPD "administers a set of law enforcement policies, practices and customs involving hiring, training, and supervision of its police officers."  [ECF No. 3 at ¶ 7] After the defendants filed motions to dismiss the original petition, she filed her first amended complaint dropping the SCPD and changing her claims for relief from state negligence claims to federal section 1983 claims and adding Stanczak and Clamors as new defendants.  Her original petition never identifies Stanczak and Clamors and uses the phrase "police officers" and asserts that a minimum of five officers were on the scene in describing the activities of the police.  Her general allegations in her petition of multiple police officers involved in the incident do not support a finding that Stanczak and Clamors knew or should have known that, absent some mistake, the action would have been brought against them.  Krupski, 560 U.S. at 549.  Moreover, the reason she sued the SCPD is that it "administers a set of law enforcement policies, practices and customs involving hiring, training, and supervision of its police officers."  That was the underlying

17

basis for her negligence claims against the SCPD.  Stanczak and Clamors are not alleged to have any role in the administration of practices and customs involving hiring, training, and supervision of police officers.  They could not have known that they were the proper party to these claims.  I find that Coburn's claims against Stanczak and Clamors in her first amended complaint do not relate back to her original petition.  As a result, I will grant Stanczak and Clamors' motion to dismiss the claims against them.

*Claims against the City of St. Charles*

In her second amended complaint, Coburn asserts claims against the City of St. Charles for Excessive Force under the 4th Amendment (Count IX) and Unlawful Seizure under the 4th Amendment (Count X).

In her excessive force claim Coburn alleges that during the casino incident an unidentified officer placed a knee on her neck while she was being handcuffed; officers ignores her complaints of wrist pain caused by the handcuffs and pressure applied to her wrists; she was thrown to the ground without provocation; and she was lifted up by her legs in response to complaining of wrist pain.  She alleges that these actions deprived her of her rights under the Constitution and were caused by the City of St. Charles' policy, custom or practice of failing to train or supervise police officers and a

widespread custom of tolerating excessive force by its police officers.

In her unlawful seizure claim Coburn alleges that she was arrested without probable cause and falsely charging her with assault of police officers because police body camera footage contradicts police statements that she was kicking and scratching police officers.  She alleges that these actions deprived her of her rights under the Constitution and were caused by the City of St. Charles' policy, custom or practice of failing to train or supervise police officers related to unlawful seizures.

A municipality cannot be held liable for a constitutional violation under Section 1983 solely because it employs a tortfeasor.  See Monell v. Dep't of Soc. Servs. of City of New York, 436 U.S. 658, 691 (1978). Rather, under Monell,"[l]iability for a constitutional violation will attach to a municipality only if the violation resulted from an official municipal policy, an unofficial custom, or a deliberately indifferent failure to train or supervise an official or employee." Bolderson v. City of Wentzville, 840 F.3d 982, 985 (8th Cir. 2016). In order to subject the City of St. Charles to § 1983 liability Coburn must show that the city "had a policy or custom of failing to act upon prior similar complaints of unconstitutional conduct, which caused the constitutional injury at issue."  Rogers v. City of Little Rock, Ark., 152 F.3d 790, 798 (8th Cir.

1998) (internal quotation omitted).  Coburn must prove that the city's alleged policy "was the moving force behind the constitutional violation." Id. at 799.

Coburn does not identify any policy or custom in support of her claims beyond her conclusory allegations.  In support of her excessive force claim Coburn cites three cases filed against the City of St. Charles.  The first is Edwards v. the City of St. Charles Police Dept., 4:23 CV 1111 MTS (E.D. Mo. Feb 15, 2024).  The plaintiff in that case alleged he was subjected to excessive force by a St. Charles police officer who placed excessively tight handcuffs on the plaintiff and slammed him to the ground.  [ECF # 1]  The plaintiff's Monell claim against the City of St. Charles was dismissed for failing to allege any policy, custom, or deliberant indifferent failure to train or supervise that led to his injury.  [ECF # 8 at 8]  The case was ultimately dismissed for failing to comply with court orders.  [ECF # 17]

The second case is Hamilton v. City of St. Charles, 4:14 CV 1020 CAS (E.D. Mo. September 23, 2014).  In that case the plaintiff alleged a mounted St. Charles police officer grabbed the plaintiff by the shirt collar, choking him and bruising his neck, while plaintiff was taking a video with his cell phone of police activity.  Another officer allegedly seized plaintiff's phone, deleted the video, and returned the phone to plaintiff.  The plaintiff asserted a Monell claim

20

against the city for a policy or custom of stopping and seizing individuals without reasonable suspicion.  [ECF # 1]  The case was dismissed for a failure to prosecute.  [ECF # 12]

The third case is Reed v. City of St. Charles, 561 F.3d 788 (8th Cir. 2009).  In that case the City of St. Charles was granted summary judgment on plaintiff's excessive force claim incurred during his arrest.  The United States Court of Appeals for the Eighth Circuit affirmed, finding the plaintiff failed to produce evidence that the officers used excessive force in the incident.  Id. at 791-792.

None of these three cases, spanning fifteen years, establishes that the City of St. Charles has a custom or policy of allowing its police officers to use excessive force in their work.

In support of her unlawful seizure claim Coburn offers the above dismissed Hamilton case and the case of Smith v. City of St. Charles, 4:21 CV 93 RWS (E.D. Mo. Nov. 4, 2021).  The plaintiff in the Smith case alleges he was falsely arrested for stalking and harassing a woman.  [ECF # 1]  His claims against the city were dismissed for failing to allege any facts to support his claim of a city policy or custom of permitting false arrests.

Neither of these cases establish that the City of St. Charles has a custom

21

or policy of permitting unlawful seizures.  As a result, I will grant the City of St. Charles' motion to dismiss.

Accordingly,

**IT IS HEREBY ORDERED that** Defendants Boyd Gaming Corporation, Ameristar Casino St. Charles, LLC, and Andrew Roy Casem's motion to dismiss the claims against them (Counts I-VI) [65] is **GRANTED**.

**IT IS FURTHER ORDERED that** Defendants John Edward Stanczak, IV, Ty Edward Clamors, and City of St. Charles, Missouri's motion to dismiss the claims against them (Counts VII-X) [67] is **GRANTED**.

_____
RODNEY W. SIPPEL
UNITED STATES DISTRICT JUDGE

Dated this 31st day of March, 2026.